UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

            Plaintiff,

v.                                          Case No. 25-cv-102-pp

TONYA MOON, *et al.*,

            Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE (DKT. NO. 17), DENYING AS MOOT PLAINTIFF'S MOTION TO ACCEPT PARTIAL FILING FEE (DKT. NO. 18) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, for an extension of time to pay the initial partial filing fee, dkt. no. 17, and to accept the partial filing fee, dkt. no. 18, and screens his complaint, dkt. no. 1.

I.    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On February 11, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $1.60. Dkt. No. 9. The court received that fee on April 11, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order. Because the court has received the plaintiff's payment of the $1.60 initial partial filing fee, the court will deny as moot his motions for an extension of time to pay the fee and for the court to accept his partial filing fee. Dkt. Nos. 17, 18.

**II. Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Complaint Examiner Tonya Moon, Kitchen Supervisor Ms. Davis, Kitchen Manager Jane or John Doe, Sergeant Plate and former Warden Randall Hepp. Dkt. No. 1 at ¶¶3–7. The plaintiff alleges that all defendants work at Waupun or worked there at all relevant times. Id. He sues all defendants in their individual capacities only. Id. at p.7.

The plaintiff alleges that he is a practicing Muslim and has been for years. Id. at ¶8. He says that during Ramadan from March 11 to April 9, 2024, he repeatedly received rotten bologna at dinner and the same food items in his breakfast and dinner bags. Id. He alleges that he sent at least a dozen requests about his food to Davis and the Jane/John Doe kitchen manager, including

witness signatures from several officers. Id. at ¶9. He says that the kitchen managers ignored his concerns and falsified unspecified legal documents "to cover up there [*sic*] crimes's [*sic*]." Id. The plaintiff alleges that since March 14, 2024, he has had at least a half-dozen appointments with medical staff to address stomach pains, constipation, nausea, vomiting and other gastrointestinal issues from consuming the rotten bologna. Id. at ¶10.

The plaintiff says that on March 20, 2024, he filed his first administrative complaint about his spoiled food and resulting health issues. Id. at ¶11. He says that defendant Moon twice returned his complaint without processing it. Id. He alleges that Moon later rejected his complaint under Department of Corrections (DOC) policy because it "lacks merit or is otherwise frivolous." Id. He appealed the rejection to Warden Hepp with evidence supporting his concerns, including the signatures from the officers. Id. The plaintiff does not reveal the result of his appeal. Id. The plaintiff attached Moon's complaint examiner report, showing her April 10, 2024 rejection of his administrative complaint. Dkt. No. 1-1 at 10–13. He also attached the complaint examiner's receipt of his appeal, but he did not attach the results of the appeal. Id. at 14.

The plaintiff says that on April 10, 2024, he filed a second administrative complaint against Moon, alleging that she stole a previous administrative complaint, then claimed to have returned it. Dkt. No. 1 at ¶12. He says that Sergeant Plate told him that Moon did not return the complaint. Id. He claims that Moon rejected "other inmate's complaints" and stole evidence to prevent those incarcerated persons from complaining about spoiled meat in their meals. Id.

The plaintiff claims that Moon's actions violated his rights under the First, Eighth and Fourteenth Amendments. Id. at ¶13. The plaintiff claims that

4

Davis and the Doe kitchen manager also violated his rights under the First, Eighth and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by serving him and other incarcerated persons spoiled meat during Ramadan "in order to discourage them from participating in their religious belives [*sic*]." Id. at ¶14. He says that both defendants lied about providing the spoiled food and were fired from Waupun. Id. The plaintiff asserts that Plate violated his rights because Plate witnessed the plaintiff receiving the spoiled food and failed to do more to ensure his safety. Id. at ¶15. He claims that Hepp violated his rights by failing to correct the issues with his meals despite the plaintiff notifying him about the issue by filing the appeal from the rejection of his complaint. Id. at ¶16.

The plaintiff seeks compensatory and punitive damages against the defendants. Id. at p.7. He also seeks an injunction requiring the defendants "to serve adequate, healthy, and different food's [*sic*] on a daily basis and on a timely schedule" during Ramadan. Id.

    C.    <u>Analysis</u>

The court analyzes the plaintiff's allegations about his food under the Eighth Amendment, which imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Eighth Amendment protects against "deprivations of essential food" and "other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). But only "extreme deprivations" amount to cruel and unusual conditions of confinement. Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). To proceed on an Eighth Amendment claim, the plaintiff must show that he has been deprived of "'the minimal civilized measure of life's

necessities,'" Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at 347); and that prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm, Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

This court and several others have concluded that "[a] single instance of contaminated food is insufficient to state a claim of deliberate indifference." Morris v. Buege, Case No. 23-cv-11, 2023 WL 2465882, at *4 (E.D. Wis. Mar. 10, 2023) (citing cases). The situation is different if the plaintiff alleges "'that prison officials knew of a pattern of inmates being injured by bad food and did not[hing] to remedy the problem.'" Id. (quoting Olrich v. Kenosha County, Case No. 18-cv-1980, 2020 WL 1169959, at *3 (E.D. Wis. Mar. 11, 2020); and citing Green v. Beth, 663 F. App'x 471, 472 (7th Cir. 2016)). The plaintiff alleges that he received spoiled and monotonous food from March 11 to April 9, 2024, despite repeatedly complaining about his food to kitchen supervisors Davis and Jane/John Doe. He says he became ill and had to receive medical treatment at least a half-dozen times from consuming the rotten meat. The court will allow the plaintiff to proceed on this Eighth Amendment claim against Davis and the Doe kitchen manager, but only as it relates to the spoiled food. He may not proceed on allegations about receiving the same food during several meals because the Eighth Amendment does not entitle him to his preferred variety of foods. See Isby v. Brown, 856 F.3d 508, 522 (7th Cir. 2017) (quoting Williams v. Berge, 102 F. App'x 506, 507 (7th Cir. 2004)) (noting that incarcerated persons do not have a right "'to food that is tasty or even appetizing'").

The plaintiff also asserts that Davis and the Doe's actions violated his right to freely exercise his religion under the First Amendment. Prisoners retain a limited right to exercise their religious beliefs. See O'Lone v. Shabazz, 482

U.S. 342, 348 (1987). To proceed under the Free Exercise Clause, the plaintiff must allege facts showing that that defendants' actions created a "substantial burden" on a "central religious belief or practice." Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005) (citing Hernandez v. Comm'n of Internal Revenue, 490 U.S. 680, 699 (1989)). He must allege facts showing that the actions of prison officials "intentionally and substantially interfere[d] with [his] ability to practice his faith." Garner v. Muenchow, 715 F. App'x 533, 536 (7th Cir. 2017) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

The plaintiff has given the court little information in support of this claim. In a single line in his complaint, he says that the kitchen supervisors served him spoiled meat at dinner during Ramadan to discourage him from participating in his religious beliefs. But he alleges no facts supporting an inference that the defendants acted intentionally and based on his religious beliefs. Nor does he allege facts suggesting that having spoiled meat during dinner substantially burdened his ability to practice his faith. The plaintiff says that he received the same food items on several occasions, and he says that the bologna he received during dinner was spoiled. But he does not say what other items he received in his food bags. The plaintiff attached a statement to his complaint showing that on March 26, 2024, in addition to the spoiled bologna, the plaintiff received cheese, bran flakes, bread and corn chips in his evening food bag. Dkt. No. 1-1 at 1. He attached a detailed description of meals provided in March and April 2024, which show that the bologna he received made up only 100 to 150 calories of his evening meal. Id. at 2–6. This suggests that although the plaintiff received an inedible food item in his meals, he had sufficient other food items that he does not allege were spoiled. The court cannot conclude that receiving one spoiled item as part of one meal

7
Case 2:25-cv-00102-PP    Filed 07/10/25    Page 7 of 15    Document 19

substantially burdened the plaintiff's ability to observe Ramadan. The court will not allow the plaintiff to proceed on a claim under the First Amendment.

The court reaches the same conclusion regarding the plaintiff's claim that the kitchen supervisors violated his right to equal protection under the Fourteenth Amendment. To state a claim under the Equal Protection Clause of the Fourteenth Amendment, the plaintiff must allege facts showing that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor." Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016)). The plaintiff alleges no such facts. He says only that he received spoiled meat as part of his dinner during Ramadan. He alleges no facts suggesting that he was targeted and given spoiled meat specifically because of his religious beliefs. He does not say, for example, that similarly situated incarcerated persons who were not observing Ramadan did not receive rotten bologna during these weeks. See May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000). He has given the court no reason to believe that Davis and the Doe kitchen supervisor intentionally treated him differently because he is a practicing Muslim. The court will not allow the plaintiff to proceed on a claim under the Fourteenth Amendment.

Nor does the plaintiff state a claim under RLUIPA, which provides heightened protection to incarcerated persons' exercise of their religion. Sossamon v. Texas, 563 U.S. 277, 281 (2011). The plaintiff sues the individual defendants in their individual capacities for monetary damages. But RLUIPA permits recovery only against certain "governmental bodies that receive federal funds and accept the conditions attached by the statute." Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011). It does not permit relief against public

*employees*, nor does it allow recovery of money damages. Id. (citing Sossamon, 563 U.S. 277). The plaintiff may not proceed on a claim under RLUIPA.

The plaintiff next asserts that Sergeant Plate violated his rights by not doing more about his food despite delivering it and witnessing the spoiled food in the bags. The court analyzes these allegations under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer, 511 U.S. at 832–33. An Eighth Amendment claim consists of objective and subjective components. Farmer, 511 U.S. at 834. To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. He can satisfy this element by showing that there was "a tangible threat to his safety or well-being" or, in other words, a risk "so great that it is almost certain to materialize if nothing is done." Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011) (citing Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008) and Brown v. Budz, 398 F.3d 904, 909, 911 (7th Cir. 2005) (internal quotations omitted)). To satisfy the subjective component, the plaintiff must demonstrate that Plate acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an incarcerated person's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776.

The plaintiff's allegations do not satisfy these criteria. First, although the plaintiff alleges that the meat in his dinner bag was spoiled, that allegation alone does not show that he faced a *substantial* risk of *serious* harm. As the court explained above, the plaintiff's attachments to his complaint show that he was provided adequate other food. His allegations do not suggest that having one inedible item in his food bag created a substantial risk of serious harm to his

health or safety. Even if his allegations did satisfy the objective element, the plaintiff alleges nothing suggesting that Plate subjectively knew that the plaintiff faced a serious health risk from inadequate nutrition or knew that he would consume the rotten meat and become seriously ill. Moreover, the plaintiff says that Plate agreed to be a witness for him about his spoiled food and about Moon's alleged actions. The plaintiff does not say what more Plate could or should have done. He does not say that Plate worked in the kitchen, had control over the plaintiff's food or had any authority over the kitchen supervisors. The court will dismiss Plate as a defendant.

The plaintiff asserts that defendant Moon violated his rights by twice returning his administrative complaint about his meals before rejecting it as without merit. But allegations about the mishandling of a grievances by a complaint examiner who "did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011). The plaintiff has not alleged that Moon was involved in the preparation or delivery of his meals. He says only that she mishandled his administrative complaints about his meals. Those allegations do not state a claim. In certain situations, an incarcerated person may have a claim of deliberate indifference against a complaint examiner who fails to do her job properly and leaves the incarcerated person "to face risks that could be averted by faithful implementation of the grievance machinery." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). But that is not what the plaintiff alleges. He says that Moon returned his complaint twice and then rejected it. The plaintiff attached copies of his administrative complaint and the complaint examiner's report. These documents show that Moon did not keep his papers, and she rejected the plaintiff's administrative complaint under DOC rules rather than ignoring it

10

Case 2:25-cv-00102-PP    Filed 07/10/25    Page 10 of 15    Document 19

or otherwise failing to do her job. The plaintiff does not state a claim against Moon for doing her job "exactly as she was supposed to." Id.

The plaintiff also does not state a claim against Warden Hepp. He alleges that Hepp's only involvement was reviewing the plaintiff's appeal from the rejection of his administrative complaint about his food. He does not say what the result of his appeal was. But no matter the result, Hepp cannot be held liable for the issues with the plaintiff's food because, as with his claim against Moon, the plaintiff does not allege that Hepp was personally involved in preparing or serving that food. Even though Hepp was the warden of Waupun, he cannot be held liable for what other Waupun employees did unless he knew about that conduct before or as it was happening and facilitated, approved or condoned it or turned "a blind eye for fear of what [he] might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). The plaintiff alleges that he first told Hepp about his rotten food in his appeal from the rejection of his administrative complaint, which the complaint examiner's office received on April 15, 2024. Dkt. No. 1-1 at 14. But the plaintiff alleges that he received spoiled food only until April 9, 2024. That means that by the time the plaintiff notified Hepp of the issue, the issue had ended. He cannot hold Hepp liable for the past conduct of Waupun staff that he does not allege Hepp was even aware while it was ongoing. See Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks, 555 F.3d at 595–96); Phillips v. Mega Concrete Constr., LLC, Case No. 20-CV-658, 2022 WL 252100, at *8 (W.D. Wis. Jan. 27, 2022) (citing Nanda v. Moss, 412 F.3d 836, 842–43 (7th Cir. 2005); and George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). The court will dismiss Hepp as a defendant.

The plaintiff alleges that the actions of the kitchen supervisors and Moon affected other incarcerated persons at Waupun. But the plaintiff does not have standing to assert the rights of any other incarcerated person. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). The plaintiff may proceed on claims involving the deprivation of his own rights only.

Finally, the plaintiff seeks damages and injunctive relief ordering Waupun to provide him adequate food during Ramadan. But the plaintiff alleges that he received the problematic food during Ramadan in March and April 2024. He does not allege that he has continued to receive spoiled or redundant foods. Because he does not allege an ongoing violation of his rights, he may not seek injunctive relief. See Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). Even if the plaintiff did allege an ongoing violation, he has sued the defendants in their individual capacities only. "[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)).

To summarize: the court will allow the plaintiff to proceed on an Eighth Amendment claim against Davis and the Doe kitchen supervisor about the rotten bologna in his dinner meals between March 11 and April 9, 2024. He may proceed on this claim for damages only and may not seek injunctive relief. He may not proceed on any other claims or against any other defendants.

Because the plaintiff does not know the name of the Doe defendant, he must use discovery to learn his or her name. Once defendant Davis has responded to the plaintiff's complaint, the court will enter a scheduling order

setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline for the plaintiff to identify the Doe defendant and will provide the plaintiff additional information for identifying the Doe defendant. **The plaintiff must not start the process for identifying the Doe defendant until the court has entered the scheduling order.**

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motions for an extension of time to pay the initial partial filing fee and for the court to accept his partial filing fee. Dkt. Nos. 17, 18.

The court **DISMISSES** defendants Tonya Moon, Sergeant Plate and Randall Hepp.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on former Kitchen Supervisor Davis at Waupun Correctional Institution. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.40** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number.

13

Case 2:25-cv-00102-PP   Filed 07/10/25   Page 13 of 15   Document 19

If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 10th day of July, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**